## MARTIN COUNTY v. FLORIDA EAST COAST RY. CO., et al.
### No. 1519.

Circuit Court, Martin County.
November 30, 1962.

Dean Tooker, Stuart, for plaintiff.

John B. L'Engle, St. Augustine and Sumner & Sumner, Fort Pierce, for defendant.

C. PFEIFFER TROWBRIDGE, Circuit Judge.

This cause came on to be heard November 23, 1962, upon the motion to strike certain paragraphs of the answer to the petition; and the court having heard the argument of counsel and having considered the authorities submitted by counsel; and the court having ruled on paragraphs 1 and 3 of the motion previously in its order of November 27, 1962, denying said paragraphs of the motion; and it appearing that—

The second paragraph of the motion to strike seeks to eliminate from the answer of the defendant railroad its claim for damages other than the mere taking of the easement. In essence, this court is called upon to determine the following question—*"When a county condemns a right-of-way across a railroad for public road purposes, are the costs of automatic crossing protection devices (lights, bells, & gates), grading, preparation of base, paving of the crossing, and annual maintenance of the devices*

*and the grade crossing, includable in the compensation to be awarded by the jury?"*

This question appears to be one of first impression in the state of Florida. It has arisen in other states a sufficient number of times for both of the general law encyclopedias to reach general conclusions upon the matter. It appears that the majority rule is that when a highway is laid out across a railroad, the railroad company may be compelled to construct and maintain the crossing at its own expense, to include gates, signs, cattle guards, other safeguards against injury to persons or property, planking between the rails, and other improvements required to make the crossing convenient for travel upon the highway. 18 Am. Jur., Eminent Domain §287; 29 C.J.S., Eminent Domain §147b. The same authorities, however, recognize that in several states the railroad company is entitled to recover such expenses.

The Supreme Court of the United States in Chicago B. & Q. R.R. v. Chicago, 166 U.S. 226 (1897), held that the constitution of the United States did not require payment to a railroad in eminent domain proceedings for the expense of constructing gates, a tower for operating the gates, planking the crossing, filling between the rails, putting in an extra rail, and annual expense of depreciation, maintenance, and employment of gatemen. The court, at page 255, stated—

"The expenses that will be incurred by the railroad company in erecting gates, planking the crossing, and maintaining flagmen, in order that its road may be safely operated,—if all that should be required,—necessarily result from the maintenance of a public highway, under legislative sanction, and must be deemed to have been taken by the company into account when it accepted the privileges and franchises granted by this state. Such expenses must be regarded as incidental to the exercise of the police powers of the state."

The defendant railroad in the instant case argues, however, that a general rule applicable in other states should not be followed in the state of Florida in view of the fact that our constitutional provisions pertaining to compensation to landowners upon condemnation of property are broader and more generous to the landowner than in other states. In support of this proposition the railroad has cited Jacksonville Expressway Authority v. Henry G. DuPree Company, 108 So.2d 289 (1958), wherein the Supreme Court of Florida rejected the rule prevailing in other jurisdictions which disallows moving costs and, in view of the Florida constitutional provisions requiring that the owner be made whole, adopted a rule allowing such moving costs to be recovered.

It is obvious that the establishment of this grade crossing by the county will result in additional expense to the railroad in grading the crossing, in establishing safety devices, and in maintaining both the crossing and the devices. The problem, however, is whether this additional expense is a part of the "taking" for which compensation must be paid or whether it is incidental to the operation of the railroad and must be considered only as the general additional cost of doing business in a growing area. The reasons given by the various courts which deny such damages to the railroads vary. Some courts hold that these expenses are not recoverable because they are the result of the exercise of the police power of the state rather than the result of the taking of the right-of-way easement. Other courts hold that the reserve power of the state to alter, amend, or appeal the charter of the railroad corporation is applicable. Still other courts hold that there is an implied condition to the initial grant of the charter for the railroad since all parties must be aware that highways will subsequently be built and must necessarily cross the railroad. 18 Am.Jur., Eminent Domain §287. The Supreme Court of the United States in Chicago B. & Q. R.R. v. Chicago, cited above, stated at page 255—

"What was obtained, and all that was obtained, by the condemnation proceedings for the public was the right to open a street across land within the crossing that was used, and was always likely to be used, for railroad tracks. While the city was bound to make compensation for that which was actually taken, it cannot be required to compensate the defendant for obeying lawful regulations enacted for the safety of the lives and property of the people."

The courts of this state have been liberal in construing the eminent domain provisions of our state constitution. They have indicated that the theory and spirit of the constitutional guarantee requires a practical attempt to make the owner whole and that a person who is put to expense through no desire or fault of his own can only be made whole when his reasonable expenses are included in the compensation awarded.

In law, the large railroad corporation should be accorded the same rights as the poor widow whose property is taken. However, the large railroad corporation is entitled to the same rights only insofar as its situation is the same as that of the poor widow. To the extent that the railroad may pass off the additional expense of the crossing unto the consumer (with the concurrence of the rate regulatory bodies) the railroad is in a different situation from the widow. In essence, the real problem here is who shall bear the cost—the taxpayers of the county establishing the right-of-way over the railroad, or the corporate enterprise and its customers whose property, held for profit, is being crossed?

From the allegations in the railroad's answer to the petition, which allegations for the purposes of this motion only and not for any other purposes must be assumed to be correct, it appears that the cost of the automatic crossing protection devices will exceed $20,000, that the establishment of the grade crossing will exceed $2,000, that the maintenance of the grade will be approximately $300 per year, and that the maintenance of the automatic crossing protection devices will exceed $800 per year. We may also assume from the pleadings on file that the actual value of the easement itself is, in comparison with these other expenses, relatively small. Assuming also, which point is contested by the railroad and has not been decided by this court, that there is a necessity for this crossing and that the county has acted in good faith in establishing it, we are faced with the problem whether a county or other public body under such circumstances must pay in excess of $22,000 for each grade crossing it establishes. Such a determination would seriously impair the practical right of the county to establish new roads consistent with the growth of the area. On the other hand, the question may also be stated whether a railroad may be required to expend in excess of $22,000 for every grade crossing which is forced upon it by a county or other public body and for which it receives only nominal compensation. Such a determination might well increase the cost of railroading to such a point that it could no longer be operated as a private business with a profit incentive.

The reasons relating to the corporate charter summarized above in American Jurisprudence for the disallowance of such expenses strike this court as legal fictions or rationalizations of a predetermined conclusion. The problem is not actually one of what did the railroad and what did the state of Florida intend when the railroad's charter was issued in 1896. The problem is who must bear these expenses under our state constitution, the railroad or the public?

This court is of the opinion that the constitution of the state of Florida requires only that the railroad be compensated for the easement taken and that any additional expense of the railroad in the grade crossing or in providing automatic protection devices is a cost of railroading and not a loss due to the taking. The state has a right to regulate railroads and under these regulations may require the railroads to expend large sums of money for safety devices unconnected with grade crossings or with any exercise of the power of eminent domain. This court can see little distinction between a requirement that the railroad establish adequate warning devices at grade crossings and a requirement that a railroad locomotive be equipped with a bell or with an air braking system. It must be recognized that some

expenses which result from the establishment of one new grade crossing are not compensable in any event. For example, the railroad has not claimed any damages for expense arising out of the ringing of bells or the sounding of whistles on its locomotives as they approach the proposed crossing. Although it may be assumed that the railroad's locomotives are already equipped with such devices, it could logically be argued that the devices must be operated more frequently than before because of the additional crossing and thus the depreciation and maintenance of the devices is increased. Although in logic such additional expense could be established, as a practical matter no court or advocate would go so far. Even more remote examples of additional expense to the railroads could be conceived. The point, nevertheless, is that there must be a dividing line between what may be recovered and what may not.

We are involved here with particular expenses only because they relate to a particular taking. This circumstance clouds the real issue which is that in the public interest a railroad must expend money for many safety devices and procedures and to prevent its system of public transportation from interfering with other land, water, and air systems of public transportation. In the court's opinion the only thing that is taken from the railroad by this condemnation proceeding is the easement of right-of-way, any additional expense which the railroad incurs arises not out of the taking but out of the operation of the railroad in the public interest.

The railroad has cited to the court a number of cases and authorities to the effect that where the property taken has no real market value, the determination of compensation must depend upon the difference between the value to the railroad of the exclusive use of the property which existed before the taking and the value of the property to the railroad after the easement has been taken and that this determination may include additional expense of operation. In order to avoid any misunderstanding, it is the court's opinion that the discussion which has preceded this necessarily precludes the railroad from recovering the expenses of the safety devices and grade crossing under any view of this case and the railroad may not present such expenses to the jury as an element of valuation of the taking.

When a motion to strike is granted, the court normally permits the pleader to amend if he wishes. Under the circumstances of this case it would appear that the issue here being decided by the court would not be decided differently upon any rephrasing of the portions of the answer being stricken. However, because counsel may disagree, the court will grant a short period for

amendment after which this order shall become final. For the foregoing reasons, it is ordered and adjudged that—

(1) The motion to strike (filed herein by the petitioner) those portions of paragraph 7 of the answer of the railroad set forth in the second paragraph of the motion to strike is granted.

(2) The defendant railroad shall have seven days from the date of this order within which to amend the stricken portions of its answer. If no amendment is filed, this order shall stand as final. If the defendant railroad desires to amend and requires additional time, the court will entertain a written request therefor filed prior to the expiration of the seven day period.